No. 24-2056

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

JOSHUA HARRIS and DONITA OLDS, on behalf of
plaintiffs and the class members described herein,

Plaintiffs-Appellees,

v.

W6LS, INC., d/b/a WithU and WithU Loans, and
CALIBER FINANCIAL SERVICES, INC.,

Defendants-Appellants.

───────────────────────────────

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:23-cv-16429.
The Honorable Lindsay C. Jenkins, Judge Presiding.

───────────────────────────────
**BRIEF OF PLAINTIFFS-APPELLEES
JOSHUA HARRIS AND DONITA OLDS**
───────────────────────────────

Daniel A. Edelman
Dulijaza (Julie) Clark
Heather A. Kolbus
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2056

Short Caption: Joshua Harris, et al v. W6LS, Inc., et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Joshua Harris, Donita Olds

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Edelman, Combs, Latturner & Goodwin

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Daniel A. Edelman      Date: 11/18/2024

Attorney's Printed Name: Daniel A. Edelman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [✓]   **No** [ ]

Address: 20 S. Clark Street, Suite 1800, Chicago, IL 60603

Phone Number: 312-739-4200      Fax Number: 312-419-0379

E-Mail Address: dedelman@edcombs.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-2056

Short Caption: Joshua Harris, et al v. W6LS, Inc., et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Joshua Harris, Donita Olds

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Edelman, Combs, Latturner & Goodwin

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and
N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s/ Dulijaza (Julie) Clark　　Date: 11/18/2024

Attorney's Printed Name: Dulijaza (Julie) Clark

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** [✓] **No** [ ]

Address: 20 S. Clark Street, Suite 1800, Chicago, IL 60603

Phone Number: 312-739-4200　　Fax Number: 312-419-0379

E-Mail Address: jclark@edcombs.com

rev. 12/19 AK

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.......................................................................iv

JURISDICTIONAL STATEMENT...................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW..............................2

STATEMENT OF THE CASE FACTS....................................................4

    Illinois' Prohibitions of Predatory Loans.................................8

    Tribal Lending Charade.......................................................10

    Arbitration and Governing Law Provisions...........................13

    District Court Decision.......................................................15

SUMMARY OF ARGUMENT...........................................................18

ARGUMENT..............................................................................20

I.    CONTRARY TO DEFENDANTS' REPRESENTATIONS, PLAINTIFFS DID CHALLENGE THE DELEGATION AND ARBITRATION PROVISIONS................................................20

II.    PLAINTIFFS MAY CHALLENGE THE DELEGATION PROVISION ON THE SAME BASIS AS THE ARBITRATION PROVISION...................21

III.    CONTRARY TO DEFENDANTS' BRIEF, THE ARBITRATION AGREEMENT SPECIFICALLY LIMITS THE ARBITRATOR'S ABILITY TO ARBITRATE BY DIRECTING THE ARBITRATOR TO APPLY ONLY FEDERAL LAW AND TRIBAL LAW, TO THE EXCLUSION OF STATE LAW..............................23

IV.    THE RIGHTS WHICH THE ARBITRATOR IS EXPRESSLY DIRECTED TO DISREGARD INCLUDE NON-WAIVABLE STATE STATUTORY RIGHTS...26

    A.    The Illinois Predatory Loan Prevention Act Creates a Non-Waivable Right to Void Any Loan Made Over the Internet With an Illinois Resident At More Than 36% Interest..............................26

1. The PLPA Limits Rates to 36% And Voids Any Contract for More Interest....................................................................26

2. The PLPA Defines Its Geographic Applicability to Include the Loans at Issue..............................................................26

3. The PLPA Expressly Prohibits Waiver..................................28

4. A Choice of Law Clause That Purports to Apply to Non-Waivable Statutory Rights Is A Waiver..................................30

B. This Case Involves Waiver of Statutory Rights, Not an Ordinary Choice of Law Issue....................................................................32

V. THE DISTRICT COURT CORRECTLY HELD THAT VIKING RIVER FORBIDS USE OF AN ARBITRATION CLAUSE TO WAIVE STATE STATUTORY RIGHTS..............................................................................35

A. Defendants' Arguments Regarding *Viking River* Incorrectly Assume That the Dissent in *Mitsubishi* Is the Law.........................................37

B. The Decisions Relied Upon by Defendants Should Not Be Followed........................................................................................38

C. Defendants' Waiver Includes Federal Statutory Rights Because RICO Incorporates the PLPA and Interest Act..................................39

VI. DEFENDANTS HAVE DISCLAIMED APPLICATION OF STATE LAW, WHICH IS THE ONLY LAW AUTHORIZING THE ARBITRATION AGREEMENT AND DELEGATION PROVISIONS........................................40

A. The Tribe Does Not Have Jurisdiction to Prescribe Rules of Law Governing Transactions Made over the Internet with Non-Members of the Tribe Residing in Distant States.............................40

B. The Arbitration Agreement and Delegation Provisions Depend for Their Validity on State Law, which Defendants Disclaim........................................................................................42

VII. THE ARBITRATION AGREEMENT IS UNCONSCIONABLE AND VIOLATIVE OF ILLINOIS PUBLIC POLICY.................................................44

VIII.   THE DISTRICT COURT DID NOT DISCRIMINATE AGAINST TRIBAL
LENDERS....................................................................................................45

IX.   THE ARBITRATION AND DELEGATION PROVISIONS ARE
UNCONSCIONABLE....................................................................................46

X.   THE ILLEGAL PROVISIONS CANNOT BE SEVERED..................................48

XI.   CONCLUSION............................................................................................48

XII.   CERTIFICATE OF COMPLIANCE...............................................................50

XIII.   CERTIFICATE OF SERVICE.....................................................................51

# Table of Authorities

*American Express Co. v. Italian Colors Restaurant,*
570 U.S. 228 (2013) ....................................................................16, 35, 37

*Arthur Andersen L.L.P. v. Carlisle,*
556 U.S. 624 (2009) ........................................................... 39, 42

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) .................................................................. 42

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,*
805 F.2d 663 (7th Cir. 1986) .................................................. 27

*Brice v. Haynes Investments, LLC,*
13 F.4th 823 (9th Cir. 2021) .................................................. 38

*Brice v. Haynes Investments, LLC,*
35 F.4th 1219 (9th Cir. 2022).................................................. 38

*Townsend v. Sears, Roebuck & Co.,*
227 Ill. 2d 147 N.E.2d 893 (2007) ......................................... 27

*Dillon v. BMO Harris Bank, N.A.,*
856 F.3d 330 (4th Cir. 2017) ...................................... 22, 36, 48

*DIRECTV, Inc. v. Imburgia,*
577 U.S. 47 (2015) .................................................................. 33

*Dunn v. Global Trust Mgmt., LLC, No. 21-10120,*
2024 U.S.App. LEXIS 24993 (11th Cir., Oct. 3, 2024)......................... 38, 39

*Fahy v. Minto,*
2024 U.S.Dist. LEXIS 45147 ............................................ 21, 36

*First Nat'l Bank v. Malpractice Research,*
179 Ill. 2d 353 N.E.2d 1179 (1997) ....................................... 45

*Flynn Beverage, Inc. v. Joseph E. Seagram & Sons, Inc.,*
815 F. Supp. 1174 (C.D. Ill. 1993) ......................................... 30

*Franklin's Sys., Inc. v. Infanti,*
883 F. Supp. 246 (N.D. Ill. 1995) ........................................... 30

*Gibbs v. Haynes Invs., LLC,*
967 F.3d 332 (4th Cir. 2020) .................................................. 22

*Gibbs v. Sequoia Capital Operations, LLC,*
966 F.3d 286 (4th Cir. 2020) .................................................. 22

*Gingras v. Think Finance, Inc.*,
   922 F.3d 112 (2d Cir. 2019) ...................................... 18, 21, 24, 41, 47, 49

*Harris v. FSST Management Services, LLC*,
   686 F.Supp.3d 734 U.S. Dist. LEXIS 138601, (N.D.Ill. 2023).....22, 41, 44, 46-47

*Harris v. W6LS, Inc.*,
   2024 U.S. Dist. LEXIS 91687, 2024 WL 2319716 (N.D.Ill.) ............... 15, 36

*Hayes v. Delbert Servs. Corp.*,
   811 F.3d 666 (4th Cir. 2016) .......................................................... 22, 48

*Hengle v. Treppa*,
   19 F.4th 332 (4th Cir. 2021) ................................... 21, 22, 24, 36, 43, 48

*Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*,
   192 F.3d 724 (7th Cir. 1999) (diversity) ................................................... 27

*Jackson v. Payday Fin., LLC*,
   764 F.3d 765 (7th Cir. 2014) ...................................... 18, 38, 40-41, 44, 46

*Korean Am. Broad. Co. v. Korean Broad. Sys., 09cv6665*,
   2012 U.S. Dist. LEXIS 44353 (N.D. Ill. Mar. 29, 2012) ........................... 30

*MacDonald v. CashCall, Inc.,16cv2781*,
   2017 U.S.Dist. LEXIS 64761, 2017 WL 1536427 (D.N.J., April 28, 2017)
   aff'd 883 F. 3d 220 (3d Cir. 2018)..................................... 21, 43, 31, 39, 48

*Maher & Assocs., Inc. v. Quality Cabinets*,
   267 Ill.App.3d 69, N.E.2d 1000 (2d Dist. 1994) ...................................... 45

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*,
   473 U.S. 614 (1985) ................................................. 16, 21, 23, 32, 35, 46

*Montana v. United States*,
   450 U.S. 544 (1981) ...................................................................... 42

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) ................................................................... 39, 42

*Walton v. Uprova Credit LLC, 23cv520*,
   2024 U.S.Dist. LEXIS 51187 (S.D.Ind., March 21, 2024) ........................ 17

*Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*,
   769 F.3d 105 (2d Cir. 2014) .................................................................. 41

*Plains Commerce Bank v. Long Family Land & Cattle Co.*,
   554 U.S. 316 (2008) ...................................................................... 42

*Preston v. Ferrer,*
   552 U.S. 346 (2008) .................................................................. 17

*Razor v. Hyundai Motor Am.,*
   222 Ill. 2d 75, 854 N.E.2d 607 (2006) ............................... 44, 46

*Rent-A-Ctr.,* W., Inc. v. Jackson
   561 U.S. 63 (2010) ................................................................... 21

*Rideout v. CashCall, Inc., 2:16cv3817,*
   2018 U.S. Dist. LEXIS 37908, (D.Nev. March 8, 2018) ............. 48

*Rivas v. Coverall North America, Inc., No. 22-56192*
   2024 U.S.App. LEXIS 7478, 2024 WL 1342738 (9th Cir., March 29, 2024)
   ................................................................................................. 36

*Rodgers-Rouzier v. American Queen Steamboat Operating Co.,*
   104 F.4th 978 (7th Cir. 2024) ....................................... 37, 42-43

*Ryan v. Delbert Servs. Corp.,15cv05044,*
   2016 U.S.Dist. LEXIS 121246, 2016 WL 4702352 (E.D. Pa. Sept. 8, 2016)
   ............................................................................................. 43-44

*Smith v. Western Sky Financial, LLC,*
   168 F.Supp.3d 778 (E.D.Pa. 2016) .................................... 41, 43

*Solomon v. American Web Loan,*
   375 F. Supp. 3d 638 (E.D. Va. 2019) .................................... 12

*To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc.,*
   152 F.3d 658 (7th Cir. 1998) ................................................. 30

*Viking River Cruises v. Moriana,*
   596 U.S. 639 (2022) ......................................................... 17, 21

*Viking River Cruises v. Moriana,*
   596 U.S. 653 (2022) .................................... 32, 35-36, 37, 46

*Walton v. Uprova Credit LLC, 23cv520,*
   2024 U.S.Dist. LEXIS 51187, 2024 WL 1241836 (S.D.Ind., March 21, 2024)
   ............................................................................................. 35, 36

*Williams v. Medley Opportunity Fund II, LP,*
   965 F.3d 229 (3d Cir. 2020) ................................................. 21

*Wright-Moore Corp. v. Ricoh Corp.,*
   908 F.2d 128 (7th Cir. 1990) ................................................. 30

**Statutes and Rules**

*Restatement 2d, Conflict of Laws*
  §187, Comment g .................................................................... 31, 34
  §6 ...................................................................................... 27, 33

U.S. Const. art. I, §8 .................................................................. 34

9 U.S.C. §16(a)(1)(c) ................................................................... 1

15 U.S.C. §1693m ..................................................................... 1, 8

18 U.S.C. §1961(6) ...................................................................... 39

18 U.S.C. §1962(c) ...................................................................... 39

18 U.S.C. §1964 ...................................................................... 1, 8

28 U.S.C. §1292(b) ..................................................................... 36

28 U.S.C. §1331 .......................................................................... 1

28 U.S.C. §1332(d) ...................................................................... 1

28 U.S.C. §1337 .......................................................................... 1

28 U.S.C. §1367 .......................................................................... 1

205 ILCS 670/1 ......................................................................... 10

205 ILCS 670/20 ........................................................................ 10

720 ILCS 5/1-5 ......................................................................... 10

720 ILCS 5/17-59 ...................................................................... 10

815 ILCS 122/1-15, 4-5 ................................................................ 10

815 ILCS 123/15-1-1 et seq ............................................................. 8

815 ILCS 123/15-1-5 .................................................................... 9

815 ILCS 123/15-1-10 ................................................................... 9

815 ILCS 123/15-1-15 .............................................................. 8, 9, 27

815 ILCS 123/15-5-5 ................................................................... 26

815 ILCS 123/15-5-10 .................................................................. 26

815 ILCS 123/15-5-15 ............................................................. 9, 29, 31

815 ILCS 123/15-10-5 ................................................................ 9, 29

815 ILCS 123/15-10-25 ........................................................... 9, 28, 31

815 ILCS 205/4 ...................................................................... 10, 26

815 ILCS 205/6 ................................................................... 8, 10, 26

815 ILCS 205/6 ........................................................................ 8

815 ILCS 205/8 ....................................................................... 28

815 ILCS 505/1 et seq. ................................................................ 8

815 ILCS 505/10a .......................................................................... 26

815 ILCS 505/10c .......................................................................... 31

**JURISDICTIONAL STATEMENT**

The District Court had subject matter jurisdiction under 28 U.S.C. §1331 (general federal question), 15 U.S.C. §1693m (EFTA), 18 U.S.C. §1964 (RICO), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction). Jurisdiction may also exist under the Class Action Fairness Act, 28 U.S.C. §1332(d).  Whether jurisdiction exists under 28 U.S.C. §1332(d) does not depend on whether a class has been certified.

This Court has jurisdiction under 9 U.S.C. §16(a)(1)(C), as Defendants appeal the District Court's May 22, 2024 order denying Defendants' Motion to Compel Individual Arbitration.  A notice of appeal was filed on June 12, 2024.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court correctly held that Defendants'
      arbitration agreement and delegation provision were unenforceable
      because they operated in tandem with a "choice of no law" clause
      to effect a prospective waiver of state statutory rights?

2.    Whether the District Court correctly held that the prohibition on
      prospective waivers of statutory rights applies to state statutes as
      well as federal?

3.    Whether Defendants' loan agreements expressly direct the
      arbitrator to not apply state law?

4.    Whether the Otoe-Missouria Tribe of Indians has jurisdiction to
      prescribe rules of contract law for transactions carried out over the
      Internet with borrowers in distant states who do not actually set
      foot on Tribal lands?

5.    Whether the only law which authorizes Defendants' arbitration and
      delegation agreements is state law, which Defendants expressly
      disclaim?

6.    Whether the arbitration and delegation provisions are an
      unconscionable attempt to evade non-waivable state law?

7.    Whether the District Court created a "prejudicial" standard that
      applies only to "tribal businesses" when it thwarted the evasion of

the Illinois Predatory Loan Prevention Act ("PLPA") through the device of diverting all disputes to an arbitrator and instructing the arbitrator to not apply the PLPA or other state statutes, even though they expressly define their applicability to include the transactions at issue and prohibit waiver?

## STATEMENT OF THE CASE

**Facts**

Plaintiffs Joshua Harris and Donita Olds, residents of Illinois, obtained loans from Defendants at over 497% interest. (Amd.Cmplt. [Doc. 7], ¶¶7-8, 25-26 and Exhibits A-B) The loans are made in the name of Defendant W6LS, Inc., doing business as WithU and WithU Loans ("WithU"). Caliber Financial Services, Inc., and Does 1-20 are involved in the making, funding and collection of the loans.

WithU claims to be owned by the Otoe-Missouria Tribe of Indians, located in Oklahoma ("Tribe"). However, Plaintiffs allege that the purported "tribal" lending entity is a sham and that all substantive aspects of the lending operation — funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections — are performed by individuals and entities that are unaffiliated with the tribe and operate from places other than tribal lands, such as Kansas and Texas. (Amd.Cmplt. [Doc. 7], ¶¶53-78)

WithU operates an online lending website, www.WithULoans.com, which makes loans at interest rates exceeding 400% to consumers in many states, including Illinois. (Amd.Cmplt. [Doc. 7], ¶10) WithU uses the address of 10600 S. Pennsylvania Ave., Suite 16 #828, Oklahoma City, OK 73170-4257. (*Id.,* ¶11) In fact, this address is a rented private mailbox in a UPS store. (*Id.,* ¶12) The actual principal place of business of Defendant W6LS, Inc. is in Mission,

-4-

Kansas. (*Id.,* ¶13)

The Tribe also claimed to operate, now or in the past, several other online payday lenders, including: (1) American Web Loan, (2) Clear Creek Lending, and (3) Great Plains Lending. (Amd.Cmplt. [Doc. 7], ¶14)  Each of these lenders provided off-reservation addresses as their offices, and all of them were rented mailboxes at the same private mailbox provider. (*Id.,* ¶15)

Defendant Caliber Financial Services, Inc. ("Caliber") claims to be a corporation organized under the laws of the Tribe and owned by the Tribe. (*Id.,* ¶16) Caliber states on its website, www.CaliberFS.com, that its address is 1611 S. Utica Ave, #527, Tulsa, OK 74104-4909. This address is also a rented UPS Store mailbox. (*Id.,* ¶17)

Caliber states on its website that "We are headquartered in Red Rock, OK with additional offices located in Mission, KS." (Amd.Cmplt. [Doc. 7], ¶18) The website contains a list of job openings. In September 2023, it listed openings for an Executive Administrative Assistant in Overland Park, KS; an IT Solution Architect in Overland Park, KS; a Technical Business Analyst in Overland Park, KS; a Collection Specialist in Mission, KS; and a Facilities Coordinator in Overland Park, KS. (Exhibit C) (Amd.Cmplt. [Doc. 7], ¶19) Previously, Caliber listed openings for a Human Resource Assistant, a Growth Marketing Manager, and a Senior Direct Marketing Manager, all in Mission, KS. (Amd.Cmplt. [Doc. 7], ¶20)

The server hosting the WithU website is located in California. (Exhibit E) (Amd.Cmplt. [Doc. 7], ¶41)

Caliber states on its website, www.CaliberFS.com, that it provides "Next Gen Fintech Solutions All In One Place," that "We provide end-to-end portfolio management and personalized fintech solutions for partners who want to expand their portfolio and product offerings," and that "We have the experience, mindset, processes and tools to create real-time, streamlined experiences and personalized fintech solutions that provide expanded revenue streams for the Otoe-Missouria Tribe of Indians." (Amd.Cmplt. [Doc. 7], ¶21) In the online lending world, "portfolio management" means the business of overseeing and collecting short-term payday loans for a fee on behalf of a third party; and "partners" refers to beneficial owners of online lending websites, who provide the working capital to fund loans and who exert high levels of control over the enterprises. (Amd.Cmplt. [Doc. 7], ¶22) In other words, Caliber manages collection and underwriting operations on behalf of non-tribal investors who wish to profit from a "tribal" lending model. (Amd.Cmplt. [Doc. 7], ¶23)

Defendants Does 1-20 are other persons involved in the making of loans via WithU. They provide capital to fund the loans, request consumer credit reports on potential borrowers, market the lending website; and provide banking services, which include ACH/debit card payment processing and

servicing the loans.  (Amd.Cmplt. [Doc. 7], ¶24)

At no time has any Defendant had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling it to make loans to Illinois residents at more than 9% interest.  (Amd.Cmplt. [Doc. 7], ¶31)  Defendants nevertheless advertise and make loans to Illinois residents at triple-digit rates.  (Amd.Cmplt. [Doc. 7], ¶32)

Plaintiffs signed the loan agreements electronically, while in Illinois. (Amd.Cmplt. [Doc. 7], ¶33, 38)  At no time did Plaintiffs visit the state of Oklahoma or any business premises of any Defendant in connection with the loans.  (Amd.Cmplt. [Doc. 7], ¶39)

The funds were transferred electronically to Plaintiffs' bank accounts in Illinois.  (Amd.Cmplt. [Doc. 7], ¶34) The transfers were carried out by one of the Does.  (Amd.Cmplt. [Doc. 7], ¶35)  Repayment was to be made by ACH debit of Plaintiffs' bank accounts in Illinois.  (Amd.Cmplt. [Doc. 7], ¶36)  The ACH debits were also carried out by one of the Does.  (Amd.Cmplt. [Doc. 7], ¶37)

Defendants were aware that Illinois and other states have rate limitations that applied to their loans. Prior to the loan to Plaintiffs, Defendants received a notice from the State of Washington that their loans to residents of that state were illegal. (Amd.Cmplt. [Doc. 7], ¶42 and Exhibit F)  Defendants decided to ignore Illinois' rate limitations because they concluded that Illinois authorities were unlikely to take action to enforce them against them.  (Amd.Cmplt. [Doc.

7], ¶43)

Defendants submitted conclusory affidavits which asserted that WithU and Caliber were owned by the Tribe, but which did not address these specific allegations. (Doc. 27-1, PageID 288-89; Doc. 27-2, PageID 290-91) Similarly, Defendants' amicus assumes in its brief that WithU and Caliber are owned by the Tribe, but offers no facts to that effect.

In this action, Plaintiffs sought a declaratory judgment that the loans are void (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.* and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III), treble damages under the "unlawful debt" provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1964 (Count IV), and damages under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693 *et seq.* (Count V).

**Illinois' Prohibitions of Predatory Loans**

Effective March 23, 2021, the Illinois Predatory Loan Prevention Act ("PLPA") made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* The PLPA states (815 ILCS 123/15-1-15(a)) that it "applies to any person or entity that offers or makes a loan to a consumer in Illinois."

The PLPA  specifically covers "any transaction conducted via any medium whatsoever, including, but not limited to, paper, facsimile, Internet, or telephone" (815 ILCS 123/15-1-10, definition of "loan") and  loans made by "any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State." (815 ILCS 123/15-5-15(a))

The PLPA also applies "to any person or entity that seeks to evade its applicability by any device, subterfuge, or pretense whatsoever"  (815 ILCS 123/15-1-15(b)) and prohibits (815 ILCS 123/15-5-15(a)) "any device, subterfuge, or pretense to evade the requirements of this Act."

"Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10. Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

Finally, "There shall be no waiver of any provision of this Act."  (815 ILCS 123/15-10-25)

 Both before and after March 23, 2021, it was unlawful for anyone who did not have bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make

loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

Any loans to Illinois residents at more than 9% by unlicensed persons

are void and unenforceable. 205 ILCS 670/20(d). They also violate the Interest

Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS

205/6.

Illinois also has a criminal usury statute that provides that the making of

a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS

5/17-59. It applies to a person who "while either within or outside the State,

by his own conduct or that of another for which he is legally accountable,"

engages in conduct that amounts to an offense if "the offense is committed

either wholly or partly within the State." 720 ILCS 5/1-5.

**Tribal lending charade**

In an attempt to evade usury laws of states like Illinois, online

lenders frequently create an elaborate charade claiming their otherwise illegal

businesses are entitled to the sovereign immunity of Native American tribes.

(Amd.Cmplt. [Doc. 7], ¶53) However, to determine if a particular entity is

entitled to sovereign immunity, courts consider its method of creation,

purpose, structure, ownership, and management, including the

amount of control the tribe has, and the financial relationship between the

tribe and the entities. Entities such as WithU and Caliber usually do not

survive scrutiny when examined closely, since virtually all business functions

occur far from tribal land, are conducted by nontribal members, and overwhelmingly benefit non-tribal members to such a  degree that tribal involvement is effectively nil.  (Amd.Cmplt., ¶¶56-57)

Online resumes of Caliber employees shows none with any connection to the Tribe or that live on the Tribe's reservation.  (Amd.Cmplt. [Doc. 7], ¶60)  On March 22, 2023 and September 21, 2023, the LinkedIn profile for Charlie Corbin, "Recruiting Manager at Caliber Financial Services" contained links for open positions in "Overland Park, Kansas," "Mission, Kansas" or "Kansas City Metropolitan Area."  (Amd.Cmplt. [Doc. 7], ¶61 and Exhibits G-H)   Corbin's own location was given as Sugar Land, Texas.  (Amd.Cmplt. [Doc. 7], ¶62) Tim Madsen, Chief Marketing Officer at Caliber, gave his location as Mission, Kansas, as did Doug Oliveira, Chief Information Officer.  (Amd.Cmplt. [Doc. 7], ¶63 and Exhibits I-J) None of WithU's business is conducted on the Tribe's reservation.  (Amd.Cmplt. [Doc. 7], ¶65)  All essential business operations are performed in other locations outside of the Tribe's jurisdiction. (Amd.Cmplt. [Doc. 7], ¶66)

The Tribe receives only a couple of pennies of each dollar as "rent," and 98% or more of revenues flow to non-tribal persons and entities.  (Amd.Cmplt. [Doc. 7], ¶69)  While the Tribe's name and the names of some officers appear in documents establishing the formation of the corporate charters under which WithU and Caliber operate, on information and belief, such documents were

-11-

designed, written by, approved by, and crafted for the benefit of non-tribal beneficiaries.  (Amd.Cmplt. [Doc. 7], ¶70) The Tribe is economically depressed (Amd.Cmplt., ¶71), and has no ability to fund multiple online payday lending enterprises which lend upward of $100 million a year.  (Amd.Cmplt. [Doc. 7], ¶72) While the Tribe is the nominal owner of WithU and Caliber, covenants in the lines of credit used as working capital to fund loans require the Tribe to hire only investor-approved managers, underwriters, marketers, software vendors, and other service providers.  (Amd.Cmplt. [Doc. 7], ¶73)

Significantly, the Tribe has engaged in other similar "rent-a-tribe" schemes with other non-tribal investors in the past, including one which resulted in a class action lawsuit being filed against it.  (Amd.Cmplt. [Doc. 7], ¶76)  In July 2021, a federal court approved an $86 million settlement in which the plaintiffs alleged the Tribe engaged in a rent-a-tribe scheme concerning American Web Loan; non-tribal individuals and entities – including two Wall Street Hedge Funds – colluded to make illegal loans to consumers at triple-digit interest rates and make it appear that the Tribe was the owner of the lending enterprise, despite the Tribe having almost no involvement in the loans and receiving less than 2% of revenues. *Solomon v. American Web Loan*, 375 F. Supp. 3d 638 (E.D. Va. 2019).  (Amd.Cmplt. [Doc. 7], ¶77)  Weeks after the court's final approval of the settlement, WithU began lending operations. (Amd.Cmplt. [Doc. 7], ¶78)

**Arbitration and Governing Law Provisions**

Defendants' loan agreements (Doc. 7-1 and 7-2) each provide:

1.     They are governed by Tribal Law and applicable federal law, but are not subject to the law of any state.  (Doc. 7-1, page 3, PageID #145)  THE LOAN AND THIS AGREEMENT ARE NOT GOVERNED BY THE LAW OF YOUR STATE OF RESIDENCE OR ANY OTHER STATE.  (Doc. 7-1, page 5, PageID # 147)

2.     ANY DISPUTE YOU HAVE RELATED TO THIS AGREEMENT WILL BE RESOLVED BY FINAL AND BINDING ARBITRATION.  (Doc. 7-1, page 4, PageID 146; pages 15-16, PageID 157-58 )  Disputes subject to arbitration "include, for example, claims or disputes arising from or relating in any way to: the interpretation, applicability, validity, arbitrability, enforceability, formation or scope of any Loan Agreement or this Arbitration Agreement . . . . "  (Doc. 7-1, page 17, PageID 158)

3.     The law  applicable in arbitration is "Applicable Law, as that term is defined in your Loan Agreement," i.e., Tribal law and federal law, but not the law of any state.  (Doc. 7-1, page 18, PageID 159 ) "The arbitrator is bound by the terms of this Arbitration Agreement. He or she must apply Applicable Law, the terms of the Loan Agreement and this Arbitration Agreement."

4.     The arbitration will be conducted "solely through submission of documents in accordance with the AAA Procedures for the Resolution of

Disputes Through Document Submission, without an in-person or telephonic hearing. If the arbitrator decides that an in-person hearing is necessary, however, then the arbitration will be conducted on Tribal land or within thirty (30) miles of your then-current residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) to relinquish or waive the sovereign status or immunity of the Tribe, (b) to relinquish or waive the sovereign status of Lender or expand the scope of the limited waiver provided by Lender below in the paragraph entitled 'Enforcement of Award', or (c) to constitute a transaction of business in any place other  than the Indian country of the Tribe."

     5.     "If the AAA's rules or procedures are different than the terms of this Arbitration Agreement, the terms of this Arbitration Agreement will control."  (Doc. 7-1, page 48, PageID 190)

     6.     The borrower can reject arbitration, by mail (not on-line), but in that case "You will have IRREVOCABLY AGREED to the EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION of the SOUTHERN PLAINS COURT OF INDIAN OFFENSES in Oklahoma" and "you will have WAIVED ALL OBJECTIONS to such jurisdiction and venue."  (Doc. 7-1, page 16, PageID 158)

     7.     The borrower agrees that the loan is "made within the Tribe's jurisdiction." (Doc. 7-1, page 5, PageID 147)

     8.     WAIVER OF CLASS ACTIONS, REPRESENTATIVE ACTIONS, JURY

-14-

TRIAL: Class actions, other similar representative procedures and consolidation of claims are NOT available under your Loan Agreement. YOU UNDERSTAND AND AGREE THAT YOU MAY NOT SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, NOR PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY PROCEEDING WITH RESPECT TO ANY DISPUTE (DEFINED BELOW) OR CLAIM. Further, you understand and agree that (a) you may not join your Dispute with others, (b) you must resolve your Dispute(s) separately, and (c) you will not assert and waive any claim or right to have a Dispute resolved by a jury trial. (Par. 22, Doc. 7-1, page 15, PageID #157)

9.      "Your electronic signature and execution of this Agreement shall be deemed to occur in Indian country at Lender's business office within the Tribe's reservation in Red Rock, Oklahoma." (Doc. 7-1, page 24, PageID 166)

**District Court Decision**

Defendants filed a motion to compel arbitration (Doc. 27), to which Plaintiffs responded. On May 22, 2024, the District Court denied Defendants' motion. *Harris v. W6LS, Inc.*, 2024 U.S. Dist. LEXIS 91687, 2024 WL 2319716 (N.D.Ill.) (A-1). The District Court held that "the arbitration agreement is unenforceable because it waives their substantive state law rights." (A-1)

The District Court first held that Plaintiffs could challenge the delegation provision on the same grounds as the arbitration provision. (A-4) "The Court

holds that Plaintiffs have adequately challenged the delegation clause under Rent-A-Center, and if they succeed on their challenge to the arbitration agreement as a whole, the delegation clause must fall with the rest of the agreement." (A-5)

The District Court then held that both the arbitration and delegation provisions were unenforceable because they purport to waive substantive, non-waivable rights under state law. The court rejected Defendants' argument that it applied only to waivers of federal rights. (A-5)

Judge Jenkins reviewed at length the Supreme Court decisions holding that "an arbitration provision that prospectively waived statutory rights is invalid on public policy grounds." (A-6) Judge Jenkins noted that in *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985), the Court indicated that if an "arbitration provision's choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations," the Court "would have little hestiation in condemning the agreement as against public policy." (A-6) The "forum" referred to in *Mitsubishi Motors* is arbitration: "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." (473 U.S. at 628)

Then, in *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228

-16-

(2013), the Court "express a willingness to invalidate, on public policy grounds," arbitration agreement that "forbid[] the assertion of certain statutory rights," without limitation as to federal or state statutes.  (A-6) While the dissent in *Italian Colors* argued that the doctrine only applied to federal statutes, "[t]his view, of course, did not carry the day."  (A-7)

Judge Jenkins then held that footnote 5 in *Viking River Cruises v. Moriana*, 596 U.S. 639. 653 (2022), resolved the issue in favor of applying the doctrine to state statutes.  While *Viking River* did not use the terms "prospective waiver" or "effective vindication," both the context and the briefs in *Viking River* "makes clear that footnote 5 is about that doctrine."   (A-8 to A-9) It also cited *Preston v. Ferrer,* 552 U.S. 346, 359 (2008), where the court held that by compelling arbitration of a claim under the California Talent Agency Act ("TAA"), "Ferrer relinquishes no substantive rights the TAA or other California law may accord him."

The District Court then proceeded to "respectfully disagree" with the decision in *Walton v. Uprova Credit LLC,* 23cv520, 2024 U.S.Dist. LEXIS 51187, 2024 WL 1241836 (S.D.Ind., March 21, 2024), as wrongly decided, and distinguish other cases relied upon by Defendants.   (A-12 to A-17)

Since Defendants' arbitration agreement specifically provides that no state law applies to loans made by Defendants, Judge Jenkins held it to be unenforceable.  (A-17)

## SUMMARY OF ARGUMENT

Over the last few years, "[c]ourts across the country have confronted" these "transparent attempts to deploy tribal sovereign immunity to skirt state and federal consumer protection laws." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019).  They are not effective.

Both the arbitration agreement and the provision delegating arbitrability issues to the arbitrator are invalid.  First, they operate together with a choice of law provision to waive state and federal statutory rights. Contrary to Defendants' argument, the arbitration agreement instructs the arbitrator to reject any claims based on state law (such as the PLPA) or federal law that incorporates state law (RICO's "unlawful debt" prohibition).  Since the PLPA prescribes its geographic applicability and cannot be waived by the consumer, this amounts to an unlawful attempt to impose a prospective waiver of non-waivable rights.  The prohibition on prospective waiver of non-waivable rights applies to state statutes as well as federal, although both are implicated here.

Second, arbitration agreements are enforceable by virtue of state law, which Defendants disclaim.  As this Court held in  *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 782 (7th Cir. 2014), an Indian tribe does not have jurisdiction to prescribe rules of contract law governing Internet transactions with non-members of the Tribe off the reservation, and jurisdiction cannot be supplied by agreement.

Finally, the arbitration agreement and delegation provision are unconscionable attempts to deprive borrowers of their rights.  Invalidating them does not discriminate against "tribal businesses" – which Defendants are not  – and the invalid provisions cannot be severed.

**ARGUMENT**

**I.    CONTRARY TO DEFENDANTS' REPRESENTATIONS, PLAINTIFFS DID CHALLENGE THE DELEGATION AND ARBITRATION PROVISIONS**

Defendants' brief begins by arguing that "Plaintiff never challenged the Delegation Provisions," delegating to an arbitrator the decision whether there was a valid arbitration agreement.  (App. Br., p. 21)  Plaintiffs' response to the motion to compel arbitration stated:

> Both the arbitration agreements and the provisions delegating the validity of the agreement to the arbitrator are unenforceable for several reasons. **First,** they exclude state law, resulting in an impermissible prospective waiver of statutory rights and remedies. **Second,** the arbitration and delegation agreements are unconscionable. **Third,** agreements to arbitrate arise under state law – there is no general federal common law, the Federal Arbitration Act merely prohibits states from discriminating against agreements to arbitrate, and a Native American tribe does not have judicial or legislative jurisdiction to prescribe rules of contract law applicable to Internet transactions with nonmembers of the tribe residing in other states. By excluding state law, the arbitration and delegation agreements make themselves unenforceable. *Harris v. FSST Mgmt. Servs., LLC*, 22cv1063, 2023 U.S. Dist. LEXIS 138601, at *15 (N.D. Ill. Aug. 9, 2023); *Fahy v. Minto Dev. Corp.*, 23cv3590, 2024 U.S. Dist. LEXIS 45147, at *37-38 (N.D. Ill. Mar. 14, 2024).

(Doc. 33, page 4, PageID 309)

The statement in Defendants' brief that Plaintiffs did not challenge the delegation provisions at all is simply false.

## II.   PLAINTIFFS MAY CHALLENGE THE DELEGATION PROVISION ON THE SAME BASIS AS THE ARBITRATION PROVISION

The District Court correctly held that while parties may delegate gateway questions of arbitrability, a party may contest the enforceability of the delegation clause with the same arguments it employs to contest the enforceability of the overall arbitration agreement.  *Hengle v. Treppa*, 19 F.4th 324, 335 (4th Cir. 2021); *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020); *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 126 (2d Cir. 2019); *Fahy v. Minto, supra,* 2024 U.S.Dist. LEXIS 45147, *20-22; *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S.Dist. LEXIS 64761, * 8-9, 2017 WL 1536427 (D.N.J., April 28, 2017), aff'd, 883 F.3d 220, 226-27 (3d Cir. 2018); *Ryan v. Delbert Servs. Corp.*, 5:15cv05044, 2016 U.S.Dist. LEXIS 121246, 2016 WL 4702352 (E.D. Pa. Sept. 8, 2016) "[I]f a party challenges the validity under [9 U.S.C.] §2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under §4." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (*quoting Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)). Plaintiffs specifically challenge the enforceability of the delegation provision — as well as the arbitration agreement as a whole — because it disclaims state law and constitutes a prospective waiver of  statutory rights and remedies.

Under *Mitsubishi Motors* and *Viking River,* it is clear that an arbitration agreement that operates together with a choice of law provision to waive state

-21-

or federal statutory rights is unenforceable. If both the arbitration and delegation provisions are part of a scheme to negate non-waivable statutory rights and remedies, both are unenforceable on public policy grounds.

In *Harris v. FSST Management Services, LLC*, 686 F.Supp.3d 734, 740-41 (N.D.Ill. 2023), involving an agreement which purported to waive state and federal law, the court held that if the "animating purpose" of the arbitration agreement is to prospectively waive statutory rights, neither it nor the delegation provision are valid, citing *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 676 (4th Cir. 2016); *Hengle, supra,* 19 F.4th at 338-39 and 341-42; *Gibbs v. Haynes Invs., LLC,* 967 F.3d 332, 342 (4th Cir. 2020); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017); and *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286, 290 (4th Cir. 2020).

Similarly, arbitration and delegation provisions are unenforceable if they disclaim resort to the only body of law that permits enforcement of arbitration or delegation agreements – state law.  As discussed below, an Indian Tribe does not have jurisdiction to create rules of law governing Internet transactions with non-members off the reservation, and the absence of jurisdiction cannot be waived or supplied by agreement.  The Federal Arbitration Act merely prohibits states from discriminating against agreements to arbitrate, compared to other agreements.  If neither Tribal law nor the FAA applies, and Defendants refuse application of state law, there is no body of law that authorizes either

the arbitration agreement or the delegation provision.

The same applies if the arbitration agreement or delegation provision is unconscionable.

Defendants seek to conflate (1) an argument that a contract as a whole is unenforceable under state law  with (2) an argument that an arbitration agreement is unenforceable because it waives statutory rights.  (App. Br., pp. 23-25) However, the second argument is clearly permitted under *Mitsubishi Motors* and *Viking River*.  The fact that Defendants' motive in providing for a waiver of statutory rights is that the applicable statutes declare the contract as a whole to be void does not change one argument into the other.

### III. CONTRARY TO DEFENDANTS' BRIEF, THE ARBITRATION AGREEMENT SPECIFICALLY LIMITS THE ARBITRATOR'S ABILITY TO ARBITRATE BY DIRECTING THE ARBITRATOR TO APPLY ONLY FEDERAL LAW AND TRIBAL LAW, TO THE EXCLUSION OF STATE LAW

In seeking to uphold the delegation provisions, Defendants assert that there is no issue that an arbitrator is precluded from addressing.  (App.Br., p. 26) Defendants' argument misrepresents the language of their agreement.

While "Disputes are subject to arbitration regardless of whether they are based on contract, tort, constitutional provision, statute, regulation, common law, equity or other source" (App.Br., p. 26), the Loan Agreement then proceeds to instruct the arbitrator to reject any claims not based on federal or Tribal law. The Applicable Law provisions of the Loan Agreements state that they are

governed by Tribal Law and applicable federal law, but are not subject to the law of any state.  (Doc. 7-1, page 3, PageID #145)  THE LOAN AND THIS AGREEMENT ARE NOT GOVERNED BY THE LAW OF YOUR STATE OF RESIDENCE OR ANY OTHER STATE.  (Doc. 7-1, page 5, PageID # 147)   The law  applicable in arbitration is "Applicable Law, as that term is defined in your Loan Agreement," i.e., Tribal law and federal law, but not the law of any state. (Doc. 7-1, page 18, PageID 159 )

The arbitrator is expressly directed to ***not*** apply state law to these claims.  "The arbitrator is bound by the terms of this Arbitration Agreement. He or she must apply Applicable Law, the terms of the Loan Agreement and this Arbitration Agreement."  (Doc. 7-1, page 18, PageID 159)

While the Arbitration Agreement refers to the rules of the American Arbitration Association, it expressly states that "If the AAA's rules or procedures are different than the terms of  this Arbitration Agreement, the terms of this Arbitration Agreement will control."  (Doc. 7-1, page 48, PageID 190)   The Agreement was intended to prevent application of state statutes such as the Predatory Loan Prevention Act, and Defendants cannot use AAA rules to argue otherwise.

In *Hengle v. Treppa, supra,* 19 F.4th 324 (4th Cir. 2021), loan agreements with  Virginia borrowers  required "all disputes, including the scope and validity of this Arbitration Provision," to be submitted to arbitration.  (19 F.4th

at 332) They then provided that "disputes will be governed by the laws of the Habematolel Pomo of Upper Lake . . . ." (*Id.*)  They referenced the rules of the arbitration organization, "to the extent those rules and procedures do not contradict the express terms of this Arbitration Provision of the law of the Tribe" and directed the arbitrator to apply only Tribal law.

The Fourth Circuit held that the combined effect of directing all disputes into arbitration and directing the arbitrator to apply only Tribal law was to waive rights under the statutes and laws that the arbitrator was not authorized to apply.  (19 F.4th at 339-40) The fact that the "disputes subject to arbitration explicitly include all tribal, federal or state law claims and all claims based upon a violation of any tribal, state or federal constitution, statute or regulation" did not mean that the arbitrator was authorized to apply any law other than Tribal law.  "If anything, such language highlights the arbitration provision's impermissible tactic of compelling arbitration of federal clams only to then nullify those claims by precluding application of federal law."  (19 F.4th at 343) *See also*, *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 127 n. 4 (2d Cir. 2019).

Similarly, under Defendants' agreement, all claims, regardless of source, are committed to the arbitrator, who is then directed to reject any that are based on state law.  This directive amounts to a waiver of borrowers' non-waivable rights under the PLPA, as well as under the "unlawful debt" provision

of RICO.

## IV. THE RIGHTS WHICH THE ARBITRATOR IS EXPRESSLY DIRECTED TO DISREGARD INCLUDE NON-WAIVABLE STATE STATUTORY RIGHTS

### A. The Illinois Predatory Loan Prevention Act Creates A Non-Waivable Right to Void Any Loan Made Over the Internet With an Illinois Resident At More Than 36% Interest

#### 1. The PLPA Limits Rates to 36% And Voids Any Contract for More Interest

Effective March 23, 2021, the PLPA made it unlawful for anyone other than a bank to make loans to Illinois residents at rates in excess of 36%. 815 ILCS 123/15-5-5. A loan made to an Illinois consumer by Internet or other means at more than 36% "is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10. Violations of the PLPA are actionable under the Consumer Fraud Act, 815 ILCS 505/10a, and Interest Act, 815 ILCS 205/4 and /6.  See 815 ILCS 123/15-10-5(a) (violation of PLPA is violation of Consumer Fraud Act) and 815 ILCS 123/15-5-5 (lenders must comply with Interest Act as well as PLPA).

#### 2. The PLPA Defines Its Geographic Applicability to Include the Loans At Issue

The PLPA is a somewhat unusual statute, in that it defines its own geographic applicability. It expressly applies to loans made to an Illinois consumer by out of state lenders over the Internet. It "applies to any person or

entity that offers or makes a loan to a consumer in Illinois." 815 ILCS 123/15-1-15(a). "Loan" is defined to mean "money or credit provided to a consumer in exchange for the consumer's agreement to a certain set of terms, including, but not limited to, any finance charges, interest, or other conditions" and to "include[] . . . any transaction conducted via any medium whatsoever, including, but not limited to, paper, facsimile, **Internet** , or telephone." 815 ILCS 123/15-1-10. (Emphasis added)

The statutory specification of the geographic scope of the PLPA is binding on courts. This Court applies Illinois choice of law rules with respect to non-federal issues. *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.,* 192 F.3d 724, 729 (7th Cir. 1999) (diversity); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986) (supplemental jurisdiction).

Illinois follows §6 of the *Restatement 2d, Conflict of Laws. Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 159, 879 N.E.2d 893, 900 (2007). Under §6(1), "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." A statute providing that it applies to transactions with a specified geographic nexus to the enacting state is such a directive:

> b. Intended range of application of statute. A court will rarely find that a question of choice of law is explicitly covered by statute. That is to say, a court will rarely be directed by statute to apply the local law of one state, rather than the local law of another state, in the decision of a particular issue. On the other hand, the court will constantly be faced with the question whether the issue before it falls within the intended range of

application of a particular statute. The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect. **If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid.** On the other hand, if the legislature intended that the statute should be applied only to acts taking place within the state, the statute should not be given a wider range of application.

**Sometimes a statute's intended range of application will be apparent on its face, as when it expressly applies to all citizens of a state including those who are living abroad.** When the statute is silent as to its range of application, the intentions of the legislature on the subject can sometimes be ascertained by a process of interpretation and construction. Provided that it is constitutional to do so, the court will apply a local statute in  the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles. (Comment b to §6; emphasis added)

This Court must apply the PLPA.[1]

### 3.    The PLPA Expressly Prohibits Waiver

The PLPA expressly negates the ability of consumers to waive its

protection by agreement.  815 ILCS 123/15-10-25, "No waivers," states that

"There shall be no waiver of any provision of this Act." Furthermore, "No person

---

[1]    The Illinois Interest Act also expressly addresses the permissible rate where a lender in another state contracts with an Illinois borrower. 815 ILCS 205/8 provides: "When any written contract, wherever payable, shall be made in this State, or between citizens or corporations of this State, **or a citizen or a corporation of this State and a citizen or corporation of any other State, territory or country** (or shall be secured by mortgage or trust deed on lands in this State), **such contract may bear any rate of interest allowed by law to be taken or contracted for by persons or corporations in this State or allowed by law on any contract for money due or owing in this State.** (Emphasis added)

or entity may engage in any device, subterfuge, or pretense to evade the requirements of this Act . . . ." 815 ILCS 123/15-5-15(a). 815 ILCS  123/15-10-5 provides that "(b) Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act." The Consumer Fraud Act also prohibits waiver. 815 ILCS 505/10c states that "Any waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable."

The PLPA expressly states that it was intended to protect consumers against their own poor judgment. 815 ILCS 123/15-1-5 states that "Illinois families pay over $500,000,000 per year in consumer installment, payday, and title loan fees," "nearly half of Illinois payday loan borrowers earn less than $30,000 per year, and [that] the average annual percentage rate of a payday loan is 297%." The General Assembly responded to this situation by effectively disabling Illinois consumers from entering into agreements to pay more than 36% interest.

Finally, the General Assembly expressly stated that "This Act shall be construed as a consumer protection law for all purposes. This Act shall be liberally construed to effectuate its purpose." 815 ILCS 123/15-1-5.

The PLPA could not be clearer that an Illinois consumer cannot contract out of it.

### 4.    A Choice of Law Clause That Purports to Apply to Non-Waivable Statutory Rights Is A Waiver

A choice of law clause by which a protected party agrees that a transaction subject to a non-waivable statute will be governed by the law of a less protective state constitutes a forbidden  waiver of the statutory rights. In *Wright-Moore Corp. v. Ricoh Corp.,* 908 F.2d 128, 132 (7th Cir. 1990), an Indiana franchise statute made it unlawful to require a franchisee "to prospectively assent to a release or waiver which purports to relieve any person from liability to be imposed by this chapter" or to "enter into an agreement limiting litigation brought for breach of the agreement in any manner whatsoever" (cleaned up). This Court held that this barred a choice of law provision specifying the law of a less protective state.

This Court has reached the same result under the Illinois franchise statute. *To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc.,* 152 F.3d 658, 662 (7th Cir. 1998) ("Illinois, like many other states, has made it clear that parties cannot opt out of the coverage of the Act for Illinois franchisees"); *Franklin's Sys., Inc. v. Infanti,* 883 F. Supp. 246, 250-51 (N.D. Ill. 1995) (Illinois Franchise Act applied notwithstanding the parties' contractual choice of Georgia law); *Flynn Beverage, Inc. v. Joseph E. Seagram & Sons, Inc.,* 815 F. Supp. 1174, 1178 (C.D. Ill. 1993) (Illinois Franchise Act applied notwithstanding the parties' contractual choice of New York law); *Korean Am. Broad. Co. v. Korean Broad. Sys.*, 09cv6665, 2012 U.S. Dist. LEXIS 44353, at

*6-9 (N.D. Ill. Mar. 29, 2012).

The same principle applies to usury laws.  The *Restatement* counsels that courts should decline to enforce choice-of-law provisions that were intended to evade the public policy of the state whose law would otherwise apply. *Restatement 2d, Conflict of Laws* §187, Comment g ("In the . . . usury area[], choice-of-law provisions have not been permitted to override protective statutes of the state whose local law would have been applied in the absence of an effective choice of law by the parties."). See  *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S.Dist. LEXIS 64761, *26-27,  2017 WL 1536427 (D.N.J., April 28, 2017), aff'd, 883 F.3d 220 (3d Cir. 2018).

Thus, a choice of law clause by which an Illinois consumer purports to agree that a loan which is covered by and violates the PLPA shall be governed by the law of a less protective state is (1) a prohibited "waiver," 815 ILCS 123/15-10-25, (2) a "waiver or modification of the rights, provisions or remedies of this Act," 815 ILCS 505/10c, and (3) a "device, subterfuge, or pretense to evade the requirements of this Act, including, . . . making, offering, assisting, or arranging a debtor to obtain a loan with a greater rate or interest, consideration, or charge than is permitted by this Act through any method including mail, telephone, internet, or any electronic means regardless of whether the person or entity has a physical location in the State." 815 ILCS 123/15-5-15(a).

**B.     This Case Involves Waiver of Statutory Rights, Not an Ordinary Choice of Law Issue**

Defendants repeatedly argue (App. Br., pp. 26-28)  that arbitrators regularly decide choice of law issues. The difference between impermissible prospective waiver of statutory rights and an ordinary choice of law issue is that the PLPA expressly specifies the transactions to which it applies and prohibits the consumer from agreeing otherwise.  Defendants' Loan Agreement directs the arbitrator to apply only Tribal and Federal law, to the exclusion of state law, including the PLPA.  Defendants' arbitration clause and choice-of-law clause, including a specific directive to the arbitrator to apply only federal and Tribal law, thus "operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., supra*, 473 U.S. 614, 637 n. 19 (1985).   Defendants' objective is to avoid application of non-waivable state law by sending all disputes to an arbitrator who is directed not to apply state law.

*Viking River*, in addition to prohibiting waiver of state statutory rights, also makes clear that "The FAA's mandate is to enforce arbitration agreements. … An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum." *Viking River*, 596 U.S. at 653 (cleaned up).

Thus, an arbitrator must be permitted to apply the same legal principles as a court would.  In the case of the PLPA, a court would "follow a statutory directive of its own state on choice of law," *Restatement 2d, Conflict of Laws,* §6, including the directive in the PLPA to apply the statute to any transaction in which a lender located elsewhere makes a loan to an Illinois resident by Internet.  It follows that an arbitration agreement or delegation provision which directs the arbitrator to not apply such a directive is invalid.

Defendants cite a comment in *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015), that contracting parties "might choose to have portions of their contract governed by the law of Tibet" or "the law of pre-revolutionary Russia." (App.Br., p. 28) In fact, the Court determined that the issue was one of state law contract construction, subject to invalidation by the FAA if state law discriminated against arbitration.

Moreover, the statement was hyperbole.  Courts require that either (1) "the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue" or (2) the chosen law is one with a "substantial relationship to the parties or the transaction" or other "reasonable basis for the parties choice," and application of which is not "contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective

choice of law by the parties." *Restatement 2d, Conflict of Laws*, §187.

Furthermore, the chosen body of rules must be "law," defined as "the body of standards, principles and rules . . . which the courts of [a] state apply in the decision of controversies brought before them." *Restatement 2d, Conflict of Laws*, § 4.[2]  Governmental acts which are not applied by courts to persons within the enacting jurisdiction and which authorize the commission of what would otherwise be illegal or criminal acts against nonresidents are not "laws" for choice of law purposes.[3]  This is a significant limitation, as it assures that the selected law is sufficiently mainstream that it is applied to residents of the selected jurisdiction.  In this case, there is no evidence that tribal loans are ever made to tribal members or that "tribal law" permitting such loans is applied to members of the tribe.

---

[2]  A "state" is "a territorial unit with a distinct general body of law," *Restatement 2d*, §3 and thus would include an Indian tribe.

[3]  Such acts are referred to in Art. I, §8 of the  Constitution as "Letters of Marque and Reprisal."  Congress has the sole power to authorize them.  It has not exercised such power since 1815.  It has acquiesced in international conventions abolishing them starting in 1856.

## V. THE DISTRICT COURT CORRECTLY HELD THAT VIKING RIVER FORBIDS USE OF AN ARBITRATION CLAUSE TO WAIVE STATE STATUTORY RIGHTS

Defendants assert that *Viking River* does not prohibit prospective waiver of **state** statutes. Defendants rely on *Walton v. Uprova Credit,* 23cv520, 2024 U.S.Dist. LEXIS 51187 (S.D.Ind., March 21, 2024).

As Judge Jenkins pointed out at length below, *Uprova* is wrongly decided. The briefs in *Viking River* expressly raised the issue of whether the prospective waiver doctrine applies to state statutes. The Initial Brief of Appellee-Respondent in *Viking River* (2022 U.S. S. CT. BRIEFS LEXIS 678, *33-37), concluded, "The FAA does not authorize enforcement of agreements to waive [California state law] PAGA claims any more than it authorizes agreements to waive the rights and remedies made available by those other statutes." In reply, Viking asserted (2022 U.S. S. CT. BRIEFS LEXIS 878, *9-10, n. 1) that "While Moriana repeatedly invokes *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), for the supposed rule that 'an arbitration agreement cannot . . . waive an entire statutory cause of action,' . . . that rule applies only to waivers of 'federal statutory right[s],' not state-law ones. *Italian Colors,* 570 U.S. at 235. When it comes to state efforts to insulate a state law from bilateral arbitration, the FAA and the Supremacy Clause supply the rule of decision."

The Supreme Court addressed the issue and agreed that an arbitration

agreement purporting to waive state law claims was not enforceable.

*Uprova* relied on the fact that *Viking River* did not use the "prospective waiver" or "effective vindication" language used in prior decisions. Of course, nothing requires the current Supreme Court to use the same terminology as prior courts.

The *Uprova* decision never became final. Plaintiff therein moved for reconsideration or 28 U.S.C. §1292(b) certification. Doc. 44, 23cv520, March 26, 2024. While the motion was pending, the parties settled. Doc. 53, Aug. 20, 2024.

The proposition that an arbitration clause cannot be used in conjunction with a choice of law clause to waive rights under otherwise-applicable, non-waivable state statutes has been applied by a number of lower court decisions before and after *Viking River. Fahy v. Minto, supra,* 2024 U.S.Dist. LEXIS 45147*; Harris v. W6LS, Inc., supra*, 2024 U.S. Dist. LEXIS 91687, *6-20; *Dillon v. BMO Harris Bank, N.A.*, *supra,* 856 F.3d 330, 334 (4th Cir. 2017) ("a court first must examine whether, as a matter of law, the 'choice-of-forum and choice-of-law clauses operate in tandem as a prospective waiver of a party's right to pursue statutory remedies.'"); *Hengle v. Treppa, supra*, 19 F.4th at 339.

Defendants cite the unreported decision in *Rivas v. Coverall North America, Inc.*, No. 22-56192, 2024 U.S.App. LEXIS 7478, 2024 WL 1342738 (9th Cir., March 29, 2024), as holding that *Viking River* does not apply to

arbitration agreements that preclude state statutory claims.  This is incorrect.
The court held that the rule that prohibitive arbitration costs may preclude
enforcement of an arbitration clause does not apply to state law claims.  That is
not the issue here.

### A. Defendants' Arguments Regarding *Viking River* Incorrectly Assume That the Dissent in *Mitsubishi* Is the Law

Defendants' assertion that the prospective waiver doctrine applies only to
federal statutes begins by quoting Justice Kagan's dissent in *Italian Colors.*
(App.Br., p. 38) It then cites mainly pre-*Viking River* decisions relying on that
dissent.  (App.Br., pp. 40-41)  And while perhaps at one time the prospective
waiver doctrine was considered to "identify the point at which one federal
statute (the FAA) must give way to another federal statute" (App.Br., p. 40),  the
Supreme Court has now made clear that "An arbitration agreement thus does
not alter or abridge substantive rights; it merely changes how those rights will
be processed. . . . [b]y agreeing to arbitrate a statutory claim, a party does not
forgo the substantive rights afforded by the statute; it only submits to their
resolution in an arbitral . . . forum."  *Viking River,* 596 U.S. at  653.

Defendants also claim that *Rodgers-Rouzier v. American Queen Steamboat
Operating Co.,* 104 F.4th 978 (7th Cir. 2024), supports their reading of *Viking
River*.   It does not.  It cites *Viking River* for the proposition that the FAA does
not authorize non-arbitration provisions that happen to appear in a contract
that features an arbitration clause.  This does not remotely suggest that the

FAA authorizes waiver of any type of rights.  Moreover, *Rodgers-Rouzier*

supports Plaintiffs' position that state law governs arbitration agreements, see

§VI, infra.

> **B.    The Decisions Relied Upon by Defendants Should Not Be Followed**

Defendants, as they did below, rely on *Brice v. Haynes Investments, LLC,*

13 F.4th 823, 833-36 (9th Cir. 2021).  However, that decision was vacated

when the Ninth Circuit voted to rehear the case.  35 F.4th 1219 (9th Cir. 2022).

The case then settled.  As Judge Jenkins pointed out, "the *Brice* panel created

a circuit split, and the full Ninth Circuit likely granted rehearing en banc

because it doubted that outcome."  The grant of review suggests, if anything,

that the panel decision was incorrect. (A-5)

Defendants also cite the unpublished opinion in *Dunn v. Global Trust*

*Mgmt., LLC*, No. 21-10120, 2024 U.S.App. LEXIS 24993 (11th Cir., Oct. 3,

2024).  At bottom *Dunn* is wrong.  It concluded that a combination of tribal law

and the FAA furnished sufficient rules of law to permit enforcement of a

delegation provision.  This is inconsistent with (1) this Court's decision in

*Jackson v. Payday Fin., LLC*, 764 F.3d 765, 782 (7th Cir. 2014), which held

that a tribe does not have jurisdiction to prescribe rules of law governing

Internet loans made to non-members of the tribe located outside tribal lands,

and (2) decisions holding that an arbitration agreement depends for its validity

on state contract law and that the only effect of the FAA is to prohibit states

from discriminating against arbitration. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022); *Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 631 (2009). See §VI, infra.  It also assumes that the "tribal law" is "law" that is applied to members of the tribe by tribal courts.  In addition, the case did not involve a non-waivable statute which prescribed its applicability to the transaction, as does the PLPA.  An arbitrator may perform a common-law choice of law analysis (2024 U.S.App. LEXIS 24993, *35), but an arbitrator cannot be directed to disregard non-waivable state statutes.

### C.     Defendants' Waiver Includes Federal Statutory Rights Because RICO Incorporates the PLPA and Interest Act

While Defendants seek to portray the waiver in their Loan Agreement as pertaining to state remedies only, Congress has provided both civil and criminal remedies for persons who engage in the business of making loans at rates grossly in excess of those permitted under state usury laws.  RICO, at 18 U.S.C. §1962(c), outlaws  the collection of an "unlawful debt."  An "unlawful debt" is defined in 18 U.S.C. §1961(6) as one unenforceable in whole or in part under state usury laws, where the rate is at least twice the enforceable rate, and the defendant is in the business of lending money at such rates. State law is thus the *sine qua non* of a RICO "unlawful debt" claim. The PLPA's territorial application provision also applies to the RICO "unlawful debt" claim. *McDonald v. CashCall, Inc.*, *supra*, 16cv2781, 2017 U.S. Dist. LEXIS 64761, *36-7, (D.N.J., April 28, 2017), aff'd, 883 F.3d 220 (3d Cir. 2018).

-39-

Here, Defendants' loans exceed 490%, more than 60 times the Illinois limit of 9% for an unlicensed lender and more than 12 times the Illinois limit of 36% for a licensed lender.  Defendants are in the business of making loans at such rates.

Even Defendants concede that waiver of federal statutory rights is impermissible.  Their arbitration agreement provides for just that.

## VI. DEFENDANTS HAVE DISCLAIMED APPLICATION OF STATE LAW, WHICH IS THE ONLY LAW AUTHORIZING THE ARBITRATION AGREEMENT AND DELEGATION PROVISIONS

### A. The Tribe Does Not Have Jurisdiction to Prescribe Rules of Law Governing Transactions Made over the Internet with Non-Members of the Tribe Residing in Distant States

Another reason why Defendants' arbitration agreement and delegation provision are unenforceable is that they depend for their validity on application of Tribal law when the Tribe does not have legislative jurisdiction over the transactions at issue. A tribe's substantive jurisdiction to enact legislation is essentially coterminous with its adjudicative jurisdiction and does not extend to dealings between non-Indians off the reservation.  In  *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 782 (7th Cir. 2014), this Court held that disputes regarding a tribal lending arrangement did not arise from actions on reservation land and thus tribal courts lacked subject matter jurisdiction over borrowers. (764 F.3d at 785-86)  Furthermore, "a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction" (764 F.3d at  782), so

-40-

that if tribal courts lack the power to act with respect to Internet loans, so does the tribal legislature or other governing body.   Finally, the Court held that this is a matter of subject matter jurisdiction and thus not subject to consent. (*Jackson,* 764 F.3d at 783)  Accordingly, a provision in a contract that it is "deemed" to have been made on tribal lands even though the consumer never set foot thereon has no effect. *Id.* ("a nonmember's consent to tribal authority is not sufficient to establish the jurisdiction of a tribal court").

To the same effect *is Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 115 (2d Cir. 2014); *Gingras v. Think Finance, Inc., supra*, 922 F.3d at 121, 127 (2d Cir. 2019) ("The Tribal Defendants here engaged in conduct outside of Indian lands when they extended loans to the Plaintiffs in Vermont" via the Internet . . . "Tribal law is generally unavailable outside of the reservation"); *Smith v. Western Sky Financial, LLC,* 168 F.Supp.3d 778, 784 (E.D.Pa. 2016) (recital that borrower agrees to be treated "as if he is physically present within the boundaries of the Cheyenne River Indian Reservation" does not validate Internet contract); and *Harris v. FSST Mgmt. Servs., LLC, supra* 686 F.Supp.3d at 744 ("the Seventh Circuit in *Jackson v. Payday* held  that disputes regarding a tribal lending arrangement did not arise from actions on reservation land and thus the tribe lacked subject matter jurisdiction over plaintiff borrowers. 764 F.3d at 785-86. Here, Defendants have not established a colorable claim of tribal jurisdiction.").

In *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 329-30, 333 (2008), the Supreme Court construed *Montana v. United States*, 450 U.S. 544 (1981), and concluded that "with only one minor exception [dealing with zoning], we have never upheld under *Montana* the extension of tribal civil authority over nonmembers on non-Indian land." The limitation is on "tribal civil authority," not merely judicial authority.  That is precisely what the application of Tribal law to Plaintiffs  –  assuming that "Tribal law" is law at all, see §IV.B, *supra*  –  would require.  It is impermissible.

### B.    The Arbitration Agreement and Delegation Provisions Depend for their Validity on State Law, which Defendants Disclaim.

The Supreme Court has made clear that an arbitration clause depends on state law for its validity and that the only effect of the Federal Arbitration Act ("FAA") is to prohibit states from adopting rules of law which discriminate against arbitration. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022); *see also Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 631 (2009) (state law is applicable to determine which contracts are binding under FAA §2 and enforceable under §3 if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally). Accordingly, state contract law must be applied to determine the enforceability of an arbitration clause. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (effect of FAA §2 is to preserve generally applicable state law contract defenses); *Morgan*, 596 U.S. at 418.  In  *Rodgers-Rouzier v. American Queen Steamboat Operating*

*Co.,* 104 F.4th 978, 991 (7th Cir. 2024), this Court reaffirmed that "the FAA does not itself provide a substantive law governing the formation or general interpretation of contracts, so ordinary state contract law always fills in crucial gaps in any arbitration agreement."

By disclaiming state law, Defendants thus prevent the arbitrator from applying the body of law necessary to determine arbitrability, making both the arbitration clause and the delegation clause unenforceable. *Hengle v. Treppa, supra,* 19 F.4th at 339. In *Hengle,* the loan agreement, as here, expressly disclaimed the application of any state law, but stated that the contract was governed by the FAA. The Fourth Circuit held that the ban on state law was fatal. *Id.* at 340. Reference to the FAA did not save the clause because the FAA requires application of state law and the clause prohibited the arbitrator from applying state law. *Id. Accord, MacDonald v. CashCall, Inc., supra,* 2017 U.S.Dist. LEXIS 64761, *9 (D.N.J. Apr. 28, 2017), *aff'd,* 883 F.3d 220 (3d Cir. 2018) ("[I]f the question of the enforceability of the arbitration clause were sent to an arbitrator, he or she would be categorically prohibited from applying any federal or state law to arrive at an answer."); *Smith v. Western Sky Fin., LLC,* 168 F. Supp. 3d 778, 786 (E.D. Pa. 2016) ("In practical terms, enforcing the delegation provision would place an arbitrator in the impossible position of deciding the enforceability of the agreement *without* authority to apply any applicable federal or state law") (emphasis in original); *Ryan v. Delbert Servs.*

-43-

*Corp.*, 5:15cv05044, 2016 U.S.Dist. LEXIS 121246, *13- 14 (E.D. Pa. Sept. 8, 2016) ("The wholesale waiver of federal and state law thus dooms both the delegation provision and the arbitration clause, but for different reasons.").

**VII.  THE ARBITRATION AGREEMENT IS UNCONSCIONABLE AND VIOLATIVE OF ILLINOIS PUBLIC POLICY**

Under Illinois law, a contractual provision may be unconscionable on either procedural or substantive grounds, or a combination of both. *Jackson v. Payday Fin.*, 764 F.3d 765, 777 (7th Cir. 2014), *citing Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 99, 854 N.E.2d 607, 622 (2006). Defendants' arbitration agreement and delegation provision are substantively unconscionable because they disclaim non-waivable rights under state law. *Harris v. FSST Mgmt. Servs., LLC, supra*, 686 F.Supp.3d at 744-5 (finding tribal arbitration agreement substantively unconscionable and thus unenforceable because it waived the protections of the PLPA).

Illinois enacted the PLPA to (1) outlaw loans like those at issue; (2) prohibit any and all devices for making such loans; and (3) prevent Illinois consumers from agreeing to such loans or waiving their rights. If a non-Illinois lender that makes loans over the Internet could immunize itself from the PLPA by simply inserting a choice-of-law clause specifying the law of some jurisdiction that does not protect consumers, the PLPA would be a dead letter.

Even without an express statutory prohibition of waiver, Illinois courts held that contractual choice-of-law and forum selection clauses cannot be

-44-

enforced if the contract containing it was invalid or the clause contravened

Illinois' fundamental public policy. *Maher & Assocs., Inc. v. Quality Cabinets,*

267 Ill.App.3d 69, 640 N.E.2d 1000 (2d Dist. 1994). As stated in *First Nat'l*

*Bank v. Malpractice Research,* 179 Ill. 2d 353, 358-59, 688 N.E.2d 1179, 1182

(1997):

> As a preliminary matter, we reject the defendants' suggestion that we
> apply Virginia law in determining the validity of the parties' contract
> [pursuant to a contract clause]. One cannot rely on foreign law to enforce
> a contract that is illegal in the forum, and Illinois has the stronger
> interest in the outcome of the controversy.". The fact that an Illinois
> statute declares violative contracts to be void shows that it expresses the
> fundamental public policy of the State. *Maher*, 267 Ill.App.3d at 76. A
> statutory prohibition of waiver also shows that it expresses the
> fundamental public policy of Illinois. *Rico Indus. v. TLC Grp., Inc.*, 2018 IL
> App (1st) 172279, ¶ 66, 123 N.E.3d 567, 588.

Here, the PLPA clearly states a fundamental public policy of Illinois when

it specifies what contracts it applies to, declares contracts for interest in excess

of 36% void, and goes to elaborate length to outlaw any waiver or evasion of its

provisions. A waiver of the PLPA is unconscionable.

## VIII.   THE DISTRICT COURT DID NOT DISCRIMINATE AGAINST TRIBAL LENDERS

Defendants make the unfounded accusation that the District Court

created a "prejudicial" standard that applies only to "tribal businesses."

(App.Br., pp. 30-32)   What this and several other District Courts have done is

thwart a device to evade Illinois' right to protect its residents by enacting a

statute, providing that it applies to transactions with Illinois residents over the

Internet, and further providing that the protected persons cannot agree to its

non-application.  The evasive device is to divert all disputes to an arbitrator

and then instruct the arbitrator to not apply the statute.  The device is

unlawful under *Mitsubishi Motors* and *Viking River*, and the District Court

correctly declared it unenforceable.  The fact that the statute deals with

Internet usurers and that a "tribal lending" charade has been used by such

persons does not mean that "tribal businesses" – which Defendants are not  –

have been singled out, any more than a prohibition of cocaine importation

discriminates against Hispanics residing in Colombia.

## IX.     THE ARBITRATION AND DELEGATION PROVISIONS ARE UNCONSCIONABLE

Under Illinois law, a contractual provision may be unconscionable on

either procedural or substantive grounds, or a combination of both.  *Razor v.*

*Hyundai Motor Am.*, 222 Ill. 2d 75, 854 N.E.2d 607, 622 (2006); *Jackson v.*

*Payday Fin., LLC*, 764 F.3d 765, 777-78 (7th Cir. 2014); *Harris v. FSST Mgmt.*

*Servs., LLC*, *supra*, 2023 U.S. Dist. LEXIS 138601, at *15.

The arbitration agreement is substantively unconscionable under Illinois

law because it disclaims all rights under state law.  It does so for the purpose

of undermining fundamental consumer protection laws of Plaintiffs' home

state, Illinois, even though those laws are expressly made non-waivable.

As noted above, the PLPA *expressly* (1) prescribes the transactions to

which it applies and (2) negates the ability of consumers to waive its

-46-

protections. It also states that it was intended to protect consumers against their own improvidence. 815 ILCS 123/15-1-5.

In *Harris v. FSST Mgmt. Services, LLC, supra*, 22cv1063, 2023 U.S.Dist. LEXIS 138601, *19 (N.D.Ill., Aug. 9, 2023), the late Judge Leinenweber held that an arbitration provision in a "tribal" loan agreement was unconscionable for this reason:

> The PLPA expressly negates the ability of consumers to waive its protections. 815 ILCS 123/15-10-25. Even if the prospective waiver doctrine did not serve as a unique basis not to enforce an agreement, such a waiver would nevertheless render the agreement substantively unconscionable.

See also, *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 126-28 (2d Cir. 2019) (arbitration provision requiring application of tribal law unconscionable because it deprives consumers of the protection of Vermont law).

The PLPA clearly states a fundamental public policy of Illinois when it specifies what contracts it applies to, declares contracts for interest in excess of 36% void, and goes to great lengths to outlaw any waiver or evasion of its provisions. Furthermore, it expressly states that it is intended to protect consumers from themselves in undertaking to pay usurious loans. An agreement that has the effect of making the PLPA inapplicable is both a prohibited waiver or evasion of the PLPA and invalid as contrary to public policy.

## X. THE ILLEGAL PROVISIONS CANNOT BE SEVERED

Defendants suggest (App. Br., p. 9) that the arbitration agreement can be fixed through severability. The illegal provisions are not severable because they go to the core of the arbitration agreement — their entire purpose is to evade state laws such as the PLPA. *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 676 (4th Cir. 2016); *McDonald v. CashCall, Inc., supra*, 2017 U.S. Dist. LEXIS 64761, \*10 n. 5 ("The Court also holds that the unenforceable segments of the Loan Agreement's arbitration and other provisions are not severable, as they defeat the central purpose of the contract, which was to insulate Defendants from the application of state and federal law"); *see also Dillon, supra*, 856 F.3d at 336; *Hengle v. Treppa, supra*, 19 F.4th at 344; *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 128 (2d Cir. 2019); *Rideout v. CashCall, Inc.*, 2:16cv3817, 2018 U.S. Dist. LEXIS 37908, \*18-19 (D.Nev. March 8, 2018).

## XI. CONCLUSION

For the reasons stated above, this Court should affirm the order appealed from, denying Defendants' motion to compel arbitration.

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Heather A. Kolbus
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**

20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

<u>**CERTIFICATE OF COMPLIANCE**</u>

This document complies with the type-volume limit of Fed. R. App. P. 32 and Seventh Circuit Rule 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 10,986 words according to the word counting feature of WordPerfect X6, used to produce it.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it is in Bookman Old Style 12 point type.


<u>*/s/ Daniel A. Edelman*</u>
Daniel A. Edelman

**<u>CERTIFICATE OF SERVICE</u>**

Daniel A. Edelman certifies that on November 18, 2024 this document was filed via ECF, causing a copy to be served on all counsel of record.

<u>*/s/ Daniel A. Edelman*</u>
Daniel A. Edelman