Paul M. Croker
Direct **T** 816.472.3116
PCroker@atllp.com

October 7, 2025

Office of the Clerk
United States Court of Appeals for the Seventh Circuit
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn Street Room 2722
Chicago, Illinois 60604

Re:   Notice of Supplemental Authority pursuant to Fed. R. App. P. 28(j) and Circuit Rule 28(e)- Case No. 24-2056 – Joshua Harris et al v. W6LS, Inc., et al

Dear Clerk of Court:

On February 12, 2025, Appellants argued before this Court, consistent with Points 1, 2, and 3 of their opening brief, that the district court improperly denied the Motion to Compel Arbitration filed in the district court case. I write on behalf of Appellants W6LS, Inc., and Caliber Financial Services Inc., to provide the Court with recent supplemental authority. Although not binding, this persuasive authority is relevant to Appellants W6LS, Inc.'s and Caliber Financial Services Inc.'s pending appeal seeking to overturn the district court's denial of its Motion to Compel Arbitration.

On September 30, 2025, United States District Judge David J. Hale issued an order in *Wood v. W6LS, Inc., and Caliber Financial Services, Inc., Credit, LLC,* Case Number 4:24-cv-128-DJH pending in the United States District Court for the Western District of Kentucky, Owensboro Division, granting, Defendants' Motion to Compel Individual Arbitration and Motion to Stay Case. A copy of that court's September 30, 2025 order, is attached as Exhibit A.

The Kentucky Federal Court ruling is relevant and supportive of Appellants' arguments made in its brief and during oral argument as it pertains to the enforcement of the arbitration provision contained in loan agreements that are substantively identical to the documents at issue in this appeal. The Defendants in the Kentucky Federal Court case are the same Defendants in the case at hand. The Kentucky Federal Court rejected Plaintiff's argument that choice-of-law provisions constituted an unlawful prospective waiver, enforced the agreed upon delegation provisions and ordered the case to

ARMSTRONG TEASDALE LLP | 7700 FORSYTH BLVD., SUITE 1800, ST. LOUIS, MISSOURI 63105 **T** 314.621.5070 **F** 314.621.5065 ArmstrongTeasdale.com

arbitration. This supplemental authority is supportive of Appellants' arguments raised in Points II, III, and IV of its brief and made orally at argument.

    Respectfully Submitted,

Paul Croker

cc:    all parties of record through court ECF fling system.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

ADAM WOOD,     Plaintiff,

v.     Civil Action No. 4:24-cv-128-DJH

W6LS, INC., and
CALIBER FINANCIAL SERVICES, INC.,     Defendants.

\* \* \* \* \*

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Adam Wood filed this purported class action against Defendants W6LS, Inc., and Caliber Financial Services, Inc., alleging predatory and usurious loan practices and asserting claims under Ky. Rev. Stat. §§ 360.010, 360.020, and the Kentucky Consumer Protection Act (KCPA). (Docket No. 1) W6LS and Caliber now move to compel Wood to arbitrate his claims as an individual and stay these court proceedings. (D.N. 13) Wood opposes the motion. (D.N. 18) After careful consideration, the Court will grant the defendants' motion and stay the case pending arbitration for the reasons explained below.

**I.**

Between June 29, 2022, and February 18, 2023, Wood obtained six loans from www.WithULoans.com for between $2,000 and $2,500 each. (*See* D.N. 1-1; D.N. 1-2; D.N. 1-3; D.N. 1-4; D.N. 1-5; D.N. 1-6) Defendant W6LS, "doing business as WithU and WithU Loans," is identified as the lender in the loan agreements for these transactions.[1] (D.N. 1-1, PageID.20; D.N. 1-2, PageID.45; D.N. 1-3, PageID.69; D.N. 1-4, PageID.93; D.N. 1-5, PageID.117; D.N. 1-6, PageID.141) The disclosed annual percentage rates on the loans range between 410.24 and

---

[1] Each of the loan agreements at issue contains standardized language that is materially identical. (*See* D.N. 1-1; D.N. 1-2; D.N. 1-3; D.N. 1-4; D.N. 1-5; D.N. 1-6)

1

**EXHIBIT A**

492.93 percent.  (*See* D.N. 1-1, PageID.16; D.N. 1-2, PageID.41; D.N. 1-3, PageID.66; D.N. 1-4, PageID.90; D.N. 1-5, PageID.114; D.N. 1-6, PageID.138)  The agreements also contain arbitration clauses providing that "all [d]isputes" between Wood and W6LS "must be resolved by binding arbitration."[2]  (D.N. 1-1, PageID.33–39 ¶ 23; D.N. 1-2, PageID.57–64 ¶ 23; D.N. 1-3, PageID.81–88 ¶ 23; D.N. 1-4, PageID.105–12 ¶ 23; D.N. 1-5, PageID.129–36 ¶ 23; D.N. 1-6, PageID.153–60 ¶ 23)  The agreements define "dispute[s]" to include "claims or disputes arising from or relating in any way to: the interpretation, applicability, validity, arbitrability, enforceability, formation or scope of any [l]oan [a]greement or this [a]rbitration [a]greement."  (*E.g.*, D.N. 1-1, PageID.34 ¶ 23(a))  A claim constitutes a dispute under the agreements' definition "regardless of whether [it is] based on contract, tort, constitutional provision, statute, regulation, common law, equity or other source, and regardless of whether [it] seek[s] legal, equitable and/or other remedies."  (*Id.*)

The loan agreements outline the applicable law to be used in arbitration as "[t]ribal [l]aw and applicable federal law."  (D.N. 1-1, PageID.21; D.N. 1-2, PageID.46; D.N. 1-3, PageID.69; D.N. 1-4, PageID.93; D.N. 1-5, PageID.117; D.N. 1-6, PageID.141)  The agreements further state that "in arbitration [claimants] are entitled to invoke the same body of federal law that [they] would have been entitled to invoke in litigation.  In other words, proceeding in arbitration gives [claimants] access to the exact same body of federal remedies available in litigation."  (D.N. 1-1, PageID.35 ¶ 23(d); D.N. 1-2, PageID.60 ¶ 23(d); D.N. 1-3, PageID.84 ¶ 23(d); D.N. 1-4,

---

[2] The loan agreements explicitly extend the arbitration clauses to W6LS's "agents, servicers, assigns, vendors and any third party, [W6LS]'s affiliated companies, the [Otoe-Missouria] Tribe, and each of its and their respective agents, representatives, employees, officers, directors, members, managers, attorneys, successors, predecessors, and assigns."  (*E.g.*, D.N. 1-1, PageID.34 ¶ 23(a))  Wood does not specifically argue that the clauses do not apply to Caliber.  (*See generally* D.N. 18)

2

PageID.108 ¶ 23(d); D.N. 1-5, PageID.132 ¶ 23(d); D.N. 1-6, PageID.156 ¶ 23(d))  The agreements also include a class-action waiver that reads as follows:

> Class actions, other similar representative procedures and consolidation of claims are NOT available under this Arbitration Agreement.  YOU MAY NOT SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL OR IN ANY OTHER REPRESENTATIVE CAPACITY, NOR MAY YOU PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN COURT OR IN ARBITRATION, WITH RESPECT TO ANY CLAIM THAT IS SUBJECT TO ARBITRATION.  Further, you may not join your Dispute with other persons in the arbitration; each person must arbitrate his or her own Dispute(s) separately.

(*E.g.*, D.N. 1-1, PageID.35 ¶ 23(e))  The loan agreements permitted Wood to opt out of the arbitration clause by mailing notice to W6LS.  (*See* D.N. 1-1, PageID.33 ¶ 23; D.N. 1-2, PageID.57 ¶ 23; D.N. 1-3, PageID.81 ¶ 23; D.N. 1-4, PageID.105 ¶ 23; D.N. 1-5, PageID.129 ¶ 23; D.N. 1-6, PageID.153 ¶ 23)  Wood did not opt out.  (D.N. 13-7, PageID.332 ¶ 6)

Wood filed this purported class action, on behalf of himself and all others similarly situated, against W6LS and Caliber for providing the high-interest loans.  (D.N. 1, PageID.1–3 ¶¶ 1–7)  The complaint asserts that Caliber is involved in the alleged scheme through its provision of "portfolio[-]management service to rent-a-tribe lenders, including WithU, and [joint work] with WithU."[3]  (*Id.* ¶ 5)  Wood alleges that the loans violate Kentucky law, which prohibits loans with interest rates above 8%.  (*Id.*, PageID.7 ¶ 38 (citing Ky. Rev. Stat. § 360.010))  W6LS and Caliber move to compel individual arbitration and stay the case, citing the arbitration clause contained in the loan agreements at issue.  (D.N. 13)  Wood opposes the defendants' motion, arguing that the provision delegating issues of arbitrability to the arbitrator is invalid and unenforceable.  (D.N. 18, PageID.347)

---

[3] According to the complaint, the term "rent-a-tribe" describes "the business practices of non-tribal payday lenders . . . who misrepresent themselves as being owned and operated by a Native American tribe and attempt[] to invoke sovereign immunity in order to avoid state usury laws." (D.N. 1, PageID.2 ¶ 4)

3

## II.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *see also Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005) ("[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA." (citations omitted)). Under the FAA, there is a "threshold arbitrability question—that is, whether the[] arbitration agreement applies to the particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). The parties may agree that this threshold question will be delegated to an arbitrator. *Id.* (citations omitted). But "there must be 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide" arbitrability. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In this case, the language of the loan agreements specifically delegates the issue of arbitrability to the arbitrator. (*See* D.N. 1-1, PageID.33 ¶ 23(a); D.N. 1-2, PageID.57 ¶ 23(a); D.N. 1-3, PageID.81 ¶ 23(a); D.N. 1-4, PageID.105 ¶ 23(a); D.N. 1-5, PageID.129 ¶ 23(a); D.N. 1-6, PageID.153 ¶ 23(a))

### A.   Threshold Challenge to Delegation

"[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye*, 546 U.S. at 445 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400, 402–04 (1967)). Therefore, a plaintiff who seeks to contest arbitrability must do more than challenge the validity of the contract as a whole. *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (citations omitted). Instead, the plaintiff must "challenge[] specifically the validity of the agreement to arbitrate." *Id.* (quoting *Buckeye*, 546 U.S.

at 444). In making that challenge, the plaintiff "may attack a delegation clause using the same arguments it raises against the entire arbitration agreement." *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021). A "party's mere statement that [they are] challenging the delegation provision, however, is not enough," if the reason given to invalidate the delegation provision is not "'directed specifically' to the 'delegation provision.'" *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885–86 (6th Cir. 2021) (quoting *Rent-A-Center*, 561 U.S. at 71–72). In other words, the plaintiff may not "simply recycle[] the same arguments that pertain to the enforceability of the agreement as a whole." *Id.* at 886.

W6LS and Caliber argue that Wood has not "specifically challenge[d] the delegation clause" here. (D.N. 19, PageID.361) In his response to the motion to compel, Wood states that he "specifically challenges the validity of the delegation provision, which should be found unenforceable because the prospective waiver of state law precludes an arbitrator from being able to sufficiently evaluate the arbitrability of Plaintiff's claims." (D.N. 18, PageID.355) And a response to a motion to compel arbitration is an appropriate vehicle for such a challenge. *See Swiger*, 989 F.3d at 505–06 ("A party seeking to avoid the effects of a delegation clause should raise a challenge at least in its opposition to a motion to compel arbitration." (citing *Rent-A-Center*, 561 U.S. at 71)). W6LS and Caliber, however, assert that Wood's challenge is not sufficiently specific because it does not provide substantive reasons for invalidating the delegation clause. (*See* D.N. 19, PageID.361–62 ("A party challenging a delegation clause . . . must show how the claimed deficiencies *as applied to the delegation clause* render that specific agreement invalid." (quoting *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 835 (9th Cir. 2021), *reh'g en banc granted, opinion vacated sub nom.*, *Brice v. Plain Green, LLC*, 35 F.4th 1219 (9th Cir. 2022)))) Yet in relation to the delegation clause specifically, Wood makes arguments under the prospective-waiver doctrine,

state public policy, and Kentucky law. (*See* D.N. 18, PageID.355–57) Therefore, the Court finds that Wood has specifically challenged the delegation clause, *see Rent-A-Center*, 561 U.S. at 70 (quoting *Buckeye*, 546 U.S. at 444), and will consider the merits of his arguments.

**B.     Wood's Specific Challenges to Delegation**

Wood asserts that (1) "the choice of law clause prospectively waives state rights, and, therefore, the delegation provision is unenforceable"; (2) "the inability of the arbitrator to consider state law when determining arbitrability is a[nother] separate, independent reason for rendering the delegation provision unenforceable"; and (3) "the delegation clause also is unenforceable under Kentucky law" because "contracts violating the Kentucky Constitution or applicable statutes are void and thus unenforceable." (D.N. 18, PageID.356–57)

**1.     Choice-of-Law Provisions and the Prospective-Waiver Doctrine**

Wood first challenges the delegation clause under the prospective-waiver doctrine. (*Id.*, PageID.355–57) As to both his first and second arguments, Wood asserts that the delegation provision is invalid because the agreement's choice-of-law provision bars the application of Kentucky law.[4] The agreements provide that they are "not governed by the law of [the claimant's]

---

[4] Wood cites cases from other circuits in support of his argument. (D.N. 18, PageID.352–57) Those cases, however, each involved an agreement with a choice-of-law provision that claimed to waive the application of both state and federal law and are therefore distinguishable from this case. *See Gingras v. Think Fin., Inc.*, 922 F.3d 112, 118 (2d Cir. 2019) (provisions stating the agreements are "subject solely to the exclusive laws and jurisdiction of the Chippewa Cree Tribe of the Rocky Boy Indian Reservation" and that "no other state or federal law or regulation shall apply"); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016) (agreement stating "no [non-tribal] state or federal law or regulation shall apply to this Loan Agreement" (emphasis omitted) (citations omitted)); *Hengle v. Treppa*, 19 F.4th 324, 340 (4th Cir. 2021) ("The . . . clause . . . states that '[t]he arbitrator shall apply applicable substantive Tribal law consistent with the [FAA].' But this clause does not require the content of tribal law *to be* consistent with the FAA or limit its application in the arbitration *to the extent* it is consistent with the FAA." (citations omitted)); *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020) ("[T]he governing law section of the loan agreement states that 'this [Loan] Agreement is governed only by Tribal Law and such federal law as is applicable under the Indian Commerce Clause of the United States

state of residence or any other state . . . . [R]esident state law may have interest rate limits and other consumer protection provisions that are inapplicable to the agreement, lender and [the] loan." (D.N. 1-1, PageID.22; D.N. 1-2, PageID.47; D.N. 1-3, PageID.70; D.N. 1-4, PageID.94; D.N. 1-5, PageID.118; D.N. 1-6, PageID.142)  Wood argues that this language violates the prospective-waiver doctrine.  (D.N. 18, PageID.352)

The prospective-waiver doctrine provides that "in the event the choice-of-forum and choice-of-law clauses [of a contract] operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies," courts should "have little hesitation in condemning the agreement as against public policy."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 637 n.19 (1985).  This doctrine prohibits arbitration agreements that strip plaintiffs of substantive rights under either federal or state law.  *Viking River Cruises, Inc. v. Morana*, 596 U.S. 639, 653 n.5 (2022) (citing *Preston v. Ferrer*, 552 U.S. 346, 360 (2008)).

Concern that a choice-of-law clause might bar the enforcement of substantive rights should generally be dealt with at the award-enforcement stage.  *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995); *Mitsubishi Motors*, 473 U.S. at 638.  A court should find a prospective waiver at the arbitration-enforcement stage only if there is no "uncertainty" that the "choice of law would preclude otherwise applicable . . . substantive statutory remedies."  *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) (citations omitted).  Thus, when it is possible an arbitrator will interpret the choice-of-law provision to allow state substantive law to apply, arbitration should still be ordered.  *Dunn v. Glob. Tr. Mgmt., LLC*, No. 21-10120, 2024 WL 4379966, at *12–14 (11th Cir. Oct. 3, 2024) (per curiam).  Additionally, provisions requiring the

---

Constitution.' . . . '[T]he parties have not' . . . identified any 'such federal law as is applicable under the Indian Commerce Clause' . . . .").  Here, there is no exclusion of federal law under the terms of the loan agreement.  (*E.g.*, D.N. 1-1, PageID.21; *id.* PageID.35 ¶ 23(c)–(d))

7

arbitrator to apply the FAA or ambiguities in the choice-of-law principles that will be applied support enforcing arbitration. *Id.*

Wood partially relies on a district-court case involving a loan agreement virtually identical to the one at issue here.[5] (D.N. 18, PageID.348 (citing *Harris v. W6LS, Inc.*, No. 23-CV-16429, 2024 WL 2319716, at *9 (N.D. Ill. May 22, 2024)))). Yet the *Harris* court carefully noted that the "[d]efendants argue[d] only that the prospective waiver doctrine does not apply to substantive state law rights; they ma[d]e no alternative argument that if the Court holds that the doctrine applies to state law, the Court should nevertheless enforce the arbitration agreement." *Id.* at *9. In addition to the fact that *Harris* is an unpublished district-court case, because it did not address the same arguments presented in this case, *Harris* does not decisively support denial of the motion to compel. *See id.*

Wood's agreements allow for the application of federal law, including the FAA, at the arbitrability stage. (D.N. 1-1, PageID.21, 35 ¶ 23(c)–(d)) These clauses allow him to raise choice-of-law objections with the arbitrator. *See Dunn*, 2024 WL 4379966, at *12–14. Moreover, the Court cannot predict how the application of the relevant tribal law might affect Wood's prospective-waiver argument. The Tribal Contract Code states that "[w]hen the parties have agreed in writing that a contract is to be governed or construed by the [t]ribe's law . . . [a]ny effort to effect the application of a state law not chosen by the parties shall be deemed contrary to this fundamental policy." (D.N. 13-4, PageID.267 § 69(2)) Other sections of the code, however, provide that "[a] contract must receive such an interpretation as will make it lawful . . . if it can be

---

[5] Though Wood also cites *Parker v. Tenneco*, 114 F.4th 786 (6th Cir. 2024), *Parker* did not involve choice of law. *Id.* at 790, 801. In this case, unlike in *Parker*, the contract and choice-of-law principles are not so clear that the Court can find the delegation provision invalid and take the arbitration question out of the arbitrator's hands.

8

done without violating the laws of the [t]ribe and the intention of the parties" (*id.*, PageID.266 § 65), and that "[w]ords in a contract which are inconsistent with its nature . . . are to be rejected" (*id.*, PageID.268 § 75).  An arbitrator may decide that application of these sections of the Tribal Code will require that Kentucky law be applied, especially in light of the prospective-waiver doctrine.  But the question "must be decided in the first instance by the arbitrator." *Vimar Seguros y Reaseguros*, 515 U.S. at 541.  If Wood ultimately believes that the arbitrator's determinations are erroneous, he may seek judicial redress. *See id.*; *Mitsubishi Motors*, 473 U.S. at 638; *Dillon*, 856 F.3d at 334 (citations omitted).

### 2. Validity Under State Law

A claim that a contract would be void or voidable due to its subject matter under state law does not sufficiently challenge a delegation provision contained therein.  *Buckeye*, 546 U.S. at 446 (citing *Prima Paint*, 388 U.S. and 400–04).  Therefore, Wood's third state-law-based argument fails because it is targeted at the subject matter of the contract and not the delegation provision. *See id.*

### C. Class-Action Waiver

Wood argues that the class-action waiver should not apply because the delegation provision is invalid.  (D.N. 18, PageID.357)  Because the Court rejects Wood's arguments as to the delegation provision, Wood must arbitrate the issue of arbitrability as an individual.  *See Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").

9

**D.** **Request to Stay**

"If the Court determines that the issue is referable to arbitration 'and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding' rather than dismiss the case." *Wilson v. Midland Credit Mgmt., Inc.*, No. 3:24-cv-476-DJH-RSE, 2025 WL 2263688, at *1 (W.D. Ky. Aug. 7, 2025) (quoting *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024)). Because the Court will compel arbitration and the defendants have requested a stay pending arbitration, a stay is required. *See id.*

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendants W6LS and Caliber's motion to compel individual arbitration and stay the case (D.N. 13) is **GRANTED**. The parties are **COMPELLED** to arbitrate Wood's claims pursuant to the arbitration provisions contained in the loan agreements. This matter is **STAYED** pending arbitration pursuant to 9 U.S.C. § 3. The parties **SHALL** submit a joint status report every **ninety (90) days** and promptly report on the outcome of the arbitration.

September 30, 2025

David J. Hale, Judge
United States District Court